#26106-rev & rem-SLZ

**2012 S.D. 21**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JAMIE LOUANN FARLEE,                          Plaintiff and Appellant,

    v.

CLAYTON LEE FARLEE,                          Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
ZIEBACH COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JEROME A. ECKRICH, III
Judge

\* \* \* \*

PATRICIA A. MEYERS
Rapid City, South Dakota                          Attorney for plaintiff
and appellant.

ROSE ANNE WENDELL
Pierre, South Dakota                          Attorney for defendant
and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 14, 2012

OPINION FILED **03/21/12**

#26106

ZINTER, Justice

[¶1.] After six years of marriage, Jamie and Clayton (Clay) Farlee divorced. Jamie appeals the circuit court's division of property. We reverse and remand for the entry of findings of fact and conclusions of law resolving the parties' disputes on property valuations and whether certain property is part of the marital estate.

*Facts and Procedural History*

[¶2.] Jamie and Clay married in May 2003. Prior to the marriage, Jamie inherited approximately $700,000. Jamie kept her inheritance in a separate bank account to which Clay did not have access. Although Jamie controlled the spending of her inheritance, she used a substantial part of it for household expenses, numerous family vehicles, and recreation. Clay entered the marriage as a rancher with 156 head of cattle, a mobile home, five acres of land, a pickup, and some debt. During the marriage, Clay expanded his ranching operation. Jamie raised their three children, did the bookkeeping for the ranch, and operated two home-based businesses.

[¶3.] The family initially lived in Clay's premarital mobile home, which was located on Indian trust land.[1] In 2007, Clay and Jamie bought a modular home for $150,000 and located it on that property. Jamie made a $15,000 down payment from her inheritance, and she paid most of the mortgage payments. Clay used $10,000 in profits from the sale of his mobile home for concrete work around the new home.

---

1. Clay is an enrolled member of the Cheyenne River Sioux Tribe.

[¶4.] In May 2009, the parties separated, and Jamie filed for divorce. The parties disagreed on the value of many assets. They also disagreed whether certain assets were marital property. One of the disagreements involved the value of the cattle existing at the time of trial and whether they were marital property. The court valued Clay's premarital cattle herd (156 head) at $125,000. The court valued the herd existing at the time of trial (346 head) at $248,800. The court found that both Jamie's inheritance and Clay's effort contributed to the increase in the cattle herd. The court ruled that "[t]he cattle are included in the marital estate with *consideration given* to the herd Clay owned prior to the marriage." (Emphasis added.)

[¶5.] The second disagreement involved the value of the marital home. The circuit court found that its market value on trust land was $100,000. The court, however, also found that the home's "in-use value" was $150,000. The court did not indicate which value it assigned for purposes of the property division.

[¶6.] The third disagreement involved the marital status of personal property that was traceable to Jamie's inheritance. There is no dispute that $300,000 to $450,000 of the inheritance was unaccounted for at the time of trial. The court noted that "Jamie [had] simply consumed a significant portion of inheritance without evidence of tangible benefit." The court did, however, trace "the surviving remnants of [Jamie's] inheritance to horses, tack, trailers, Jamie's business inventory, vehicles, the marital residence, and her current home in Belle Fourche." Jamie argued that because those assets were traceable to her inheritance, they were nonmarital property. In ruling on this argument, the court

determined that a suburban and a "platinum horse trailer" were nonmarital property.

[¶7.]        Finally, the parties disagreed on the value of certain personal property.  The dispute involved the value of eighty acres of land, horses, a Chevrolet pickup, a New Holland tractor, Jamie's jewelry business, a four wheeler, a "rhino," a deck, a flatbed trailer, generators, a portable barn, a storage shed, corral panels, a lawn mower, water tanks, and saddles and tack.  The court valued the eighty acres of land, the horses, the New Holland tractor, and Jamie's jewelry business.  The court did not value the remaining property.

[¶8.]        The court granted the divorce, divided the property, and ordered Clay to pay Jamie $48,000 to equalize the property division without indicating the total value of the assets awarded to Clay and Jamie.  The court denied Jamie's subsequent motion for reconsideration or clarification of the property division.  Jamie appeals contending that the court erred in failing to classify disputed assets as marital or nonmarital and in failing to value certain marital property.  "We review a court's property division for an abuse of discretion."  *Lovejoy v. Lovejoy*, 2010 S.D. 39, ¶ 16, 782 N.W.2d 669, 674.

*Decision*

[¶9.]        Jamie argues that the circuit court abused its discretion in failing to assign a value to the disputed marital property.  She contends that this Court cannot properly review the property division for an equitable distribution without those values.  We agree.  The circuit court "must place a value upon all of the property held by the parties and make an equitable distribution of that property."

*Guthmiller v. Guthmiller*, 2003 S.D. 120, ¶ 6, 670 N.W.2d 516, 517. The "failure to value a marital asset constitutes an abuse of discretion and is reversible error." *Id.*

[¶10.] In this case, the record reflects an unresolved $50,000 difference in the valuation of the home. An additional unresolved $27,430 difference exists in the valuation of the Chevrolet pickup, the four wheeler, the rhino, the deck, the flatbed trailer, the generators, the portable barn, the storage shed, the corral panels, the lawn mower, the water tanks, and the saddles and tack. It is not enough for the circuit court to surmise that property is worth "something" and then distribute the property. *Id.* The circuit court must set a value and that value must be "based upon the evidence or within a reasonable range of values presented to [the court]." *Id.* ¶ 8. The failure to value all disputed property requires a remand for the entry of valuation findings and a reconsideration of an equitable division of the property. *Id.; see also Guindon v. Guindon*, 256 N.W.2d 894, 898 (S.D. 1977).

[¶11.] With respect to marital property, "South Dakota is an 'all property state,' meaning all property of the 'divorcing parties is subject to equitable division by the circuit court, regardless of title or origin.'" *Halbersma v. Halbersma*, 2009 S.D. 98, ¶ 9, 775 N.W.2d 210, 214 (citing *Endres v. Endres*, 532 N.W.2d 65, 68 (S.D. 1995) (quoting *Radigan v. Radigan*, 465 N.W.2d 483, 486 (S.D. 1991))); *see also* SDCL 25-4-44 ("When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife."). This includes inherited property, *Halbersma*, 2009 S.D. 98, ¶ 12, 775 N.W.2d at 215, and premarital property, *Muenster v. Muenster*, 2009 S.D. 23, ¶ 16, 764 N.W.2d 712, 717. "In

arriving at an equitable division of property, a circuit court must classify property as 'marital' or 'non-marital.'" *Halbersma*, 2009 S.D. 98, ¶ 10, 775 N.W.2d at 215.

[¶12.]     In this case, the circuit court did not clearly classify all the disputed property as marital or nonmarital. With respect to the cattle, the court noted that "[t]he appreciated value of a cattle herd *may* be considered a marital asset even if the herd might be considered non-marital." (Emphasis added) (citing *Bennett v. Bennett*, 516 N.W.2d 672, 674 (S.D. 1994)). The court later concluded that "the cattle" were marital property, and that it was giving "consideration" to the herd Clay owned prior to the marriage. From these rulings, we are unable to determine what cattle were classified as marital property and the meaning of the "consideration" that was allowed for Clay's premarital cattle. Further, based on the court's findings and conclusions relating to property traceable to Jamie's inheritance, we cannot determine why a suburban and the platinum horse trailer were specifically classified as nonmarital property while much of the remaining traceable property was not explicitly classified. We conclude that the circuit court erred in failing to definitively rule on the parties' competing claims regarding all disputed marital property. *See Midzak v. Midzak*, 2005 S.D. 58, ¶ 24, 697 N.W.2d 733, 740 ("The trial court abused its discretion in not properly determining the status of all assets first as either separate or marital, and then making an equitable distribution of all assets determined to be marital in nature.").

[¶13.]     Because of uncertainties regarding the marital classification of all disputed property, and because we are unable to determine the circuit court's valuation of all marital property, we are unable to review whether the circuit court

arrived at an equitable division.[2]  Consequently, we reverse and remand for reconsideration of the property division after the entry of findings of fact and conclusions of law on the existing record clearly resolving the valuation and marital property issues.  *See Edinger v. Edinger,* 2006 S.D. 103, ¶¶ 10-11, 724 N.W.2d 852, 856 (reversing and remanding because this Court was unable to duplicate the circuit court's property values and ascertain the reasoning for the property division).  Both parties' requests for appellate attorney's fees are denied.

[¶14.]　　　GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.

---

2.　　"The law requires an *equitable,* not necessarily *equal,* division of assets." *Halbersma,* 2009 S.D. 98, ¶ 7, 775 N.W.2d at 214.