#26217-aff in pt, rev in pt & rem-DG

**2012 S.D. 81**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DANIELLE K. HUFFAKER,                          Plaintiff and Appellant,

    v.

JEFFREY W. HUFFAKER,                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE THOMAS L. TRIMBLE
Judge

* * * *

DANIEL L. PAHLKE
Rapid City, South Dakota                          Attorney for plaintiff
                                                  and appellant.


PATRICIA A. MEYERS
Rapid City, South Dakota                          Attorney for defendant
                                                  and appellee.


* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2012

OPINION FILED **11/28/12**

#26217

GILBERTSON, Chief Justice

[¶1.]        On November 17, 2011, Danielle Huffaker and Jeffrey Huffaker were granted a divorce on grounds of irreconcilable differences.  The trial court awarded Danielle primary physical custody of the parties' three minor children and ordered Jeffrey to pay Danielle $1,310 per month as child support.  The trial court also distributed the marital property and ordered the parties to pay their own attorney fees.  Danielle appeals, arguing the trial court abused its discretion in failing to: (1) value the marital property before distributing it; (2) distribute the marital property equitably; (3) order child support arrearages from January 2010 to October 2011; and (4) award Danielle attorney fees.

## FACTS

[¶2.]        Danielle Huffaker and Jeffrey Huffaker were married in 1998.  During their marriage, the parties had three children.  Danielle was 33 years old and Jeffrey was 36 years old at the time of trial.  When Danielle and Jeffrey were married, they were both employed by the Air Force.  However, Danielle was eventually medically discharged from the military and was put on disability.  At the time of trial, Danielle was retraining through the United States Department of Veterans Affairs to become an auto mechanic.  Jeffrey remained employed by the Air Force.

[¶3.]        In 2007, the parties separated and Danielle moved out of the marital home, which was located on the Air Force base.  From 2007 to the time Danielle filed for divorce in July 2010, Danielle and the kids lived at the parties' home on the Air Force base intermittently.  In August 2008, Jeffrey voluntarily began paying

Danielle $1000 per month as child support. He continued making the voluntary $1000 payments until the trial court entered a child support order in November 2011.

[¶4.] Jeffrey was entitled to receive a 50 percent Air Force retirement pension. However, in 2008, he had the option to receive a $30,000 Career Status Bonus in exchange for his pension benefits being reduced from 50 percent to 40 percent. Without informing Danielle, Jeffrey elected to take the $30,000 Career Status Bonus. Jeffrey spent the entire $30,000 without Danielle's knowledge.

[¶5.] On November 17, 2011, the trial court granted the parties a divorce on the grounds of irreconcilable differences. Danielle was awarded the 2005 BMW Mini Cooper, the 2009 Road Clipper trailer, the 1994 Pontiac Firebird, the 1982 Aljo Camper, the parties' Black Hills Federal Credit Union Joint Account, and the household goods and furnishings in her possession. She was also awarded the portion of Jeffrey's retirement which represented one-half of the fraction of their 165 months of marriage divided by Jeffrey's total months of qualifying service. In addition, the trial court ordered Danielle to pay the $8,000 loan on the 2005 BMW Mini Cooper and her $2,000 HSBC credit card debt.

[¶6.] The trial court awarded Jeffrey the 2006 Dodge Ram truck, the 2003 BMW Mini Cooper, his Wells Fargo bank account, the Certificate of Deposit, the Transamerica annuity, and the household goods, furnishings, tools, and equipment in his possession. Jeffrey was ordered to pay the $8,000 Chrysler Financial Dodge Ram truck loan, the Pioneer Lending 2003 Mini Cooper loan, and his HSBC/Best Buy credit card debt. The trial court acknowledged that the Pioneer Lending 2003

Mini Cooper loan and the HSBC/Best Buy credit card were already paid off, but it made no adjustment to the property distribution.

[¶7.] At trial, the parties disputed the value of the marital property. However, in distributing the marital property and debts, the trial court did not place values on any of the property before distributing it. Based on Danielle's proposed property values, she received property valued at $14,510, less the $8,000 debt, resulting in a net equity of $6,510 (not including her HSBC credit card debt). In contrast, Jeffrey received property valued at $61,947, less the $8,000 debt, resulting in a net equity of $53,947.

[¶8.] Under Jeffrey's proposed property values, Danielle received $12,900 in total property, less debt of $8,000, leaving her with a net equity of $4,900. On the other hand, Jeffrey received property valued at $50,537, less debt of $8,000, resulting in him receiving a net equity of $42,537. Using either party's proposed property values, the trial court's division of the property resulted in approximately a 90/10 split, with Jeffrey receiving 90 percent of the property, and Danielle receiving 10 percent. The trial court did not award Danielle an equalization payment to address the disparity in property values, nor did it explain its rationale for making the disproportionate distribution.

[¶9.] With regard to the parties' assets subject to distribution by the trial court, Danielle argued she was entitled to receive property or money equal to a portion of Jeffrey's $30,000 Career Status Bonus. Danielle asserted Jeffrey spent $14,999 of the $30,000 Career Status Bonus to pay off a loan on the parties' van. She agreed that amount was marital debt. However, Danielle argued the

remaining $15,001 was spent by Jeffrey to pay personal debts, not joint debts. Therefore, Danielle argued the remaining amount was marital property that should have been equitably distributed by the trial court. The trial court found Jeffrey spent the money to pay off a loan on the van owned by the parties, to pay for orthodontia for the parties' daughter, and to pay for other marital debts. As a result, the trial court did not award either party money or property to account for the amount Danielle alleged should have been treated as marital property.

[¶10.] In its judgment and decree of divorce, the trial court awarded Danielle primary physical custody of the parties' three children. The parties stipulated that Jeffrey's child support payment would be $1,310 per month. Based on this figure, Danielle requested that the trial court order Jeffrey to pay arrearages of $310 per month from January 1, 2010, through October 2011, because Jeffrey previously had been paying only $1000 per month as child support. The trial court ordered Jeffrey to pay $1,310 per month as child support commencing on November 1, 2011. It did not order Jeffrey to pay Danielle's requested arrearages. Finally, the trial court denied Danielle's request for attorney fees of $7,208 and ordered each party to pay their own attorney fees. Danielle appeals the trial court's distribution of property, its failure to award her child support arrearages, and its failure to award her attorney fees.

## STANDARD OF REVIEW

[¶11.] The trial court's decisions regarding child support and the division of property are reviewed under an abuse of discretion standard. *Hill v. Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d 818, 822 (citing *Billion v. Billion*, 1996 S.D. 101, ¶ 14, 553

N.W.2d 226, 230). "A circuit court's ruling on the allowance or disallowance of costs and attorney fees is also reviewed by this Court under the abuse of discretion standard of review." *Terca v. Terca*, 2008 S.D. 99, ¶ 18, 757 N.W.2d 319, 324 (citing *Eccleston v. State Farm Mut. Auto. Ins. Co.*, 1998 S.D. 116, ¶ 20, 587 N.W.2d 580, 583). An abuse of discretion is "a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d at 822 (citing *Laird v. Laird*, 2002 S.D. 99, ¶ 13, 650 N.W.2d 296, 299). Findings of fact are reviewed under the clearly erroneous standard and questions of law are reviewed de novo. *Id.*

## ANALYSIS AND DECISION

[¶12.]     1.     **Whether the trial court abused its discretion by failing to value the marital property before distributing it.**

[¶13.]     "The trial court is required to place a value on all of the property held by the parties and to make an equitable distribution of that property." *Endres v. Endres*, 532 N.W.2d 65, 68 (S.D. 1995) (citing *Caughron v. Caughron*, 418 N.W.2d 791, 792 (S.D. 1988)). "It is not enough for the circuit court to surmise that property is worth 'something' and then distribute the property." *Farlee v. Farlee*, 2012 S.D. 21, ¶ 10, 812 N.W.2d 501, 503-04 (citing *Guthmiller v. Guthmiller*, 2003 S.D. 120, ¶ 6, 670 N.W.2d 516, 517). "The circuit court must set a value and that value must be 'based upon the evidence or within a reasonable range of values presented to [the court].'" *Id.* ¶ 10, 812 N.W.2d at 504. "The failure to value a marital asset constitutes an abuse of discretion and is reversible error." *Id.* ¶ 9, 812 N.W.2d at 503. In such circumstances, the case should be remanded to the trial court "for the

entry of valuation findings and a reconsideration of an equitable division of the property." *Id.* ¶ 10, 812 N.W.2d at 504.

[¶14.]    In this case, Danielle and Jeffrey disputed the values of their major assets. However, the trial court did not place values on the property held by the parties before distributing it. Further, there is no indication in the record that the trial court adopted the proposed values of either party before dividing the property. The trial court simply awarded property to each party without any mention of the values of the individual assets or the value of each party's total award. This Court's prior case law establishes that the trial court's failure to assign values to the property before distributing it constitutes an abuse of discretion requiring reversal.

[¶15.]    Additionally, Danielle argues the trial court abused its discretion by failing to determine the value of the $30,000 Career Status Bonus Jeffrey spent on personal, non-marital debts. She argues that the amount of the Career Status Bonus Jeffrey spent on personal debts is marital property that should have been valued and equitably divided by the trial court. In its oral findings of fact, the trial court determined that the Career Status Bonus was used by Jeffrey "to pay off a van owned by the parties, to pay for orthodontia for the parties minor child, Kathlene and for other marital debts described in [Exhibit 3]."* Based on this

---

\*    The trial court's written finding of fact on this point is identical to the oral finding, except that the written finding does not include a specific reference to Exhibit 3. Number 16 in the trial court's written finding of facts provides: "The Defendant used the [Career Status Bonus] to pay off a van owned by the parties, to pay for orthodontia for the parties minor child, Kathlene and for other marital debts."

finding, the trial court did not award either party money or assets to compensate for Jeffrey's use of the Career Status Bonus.

[¶16.]        However, Exhibit 3 directly conflicts with the trial court's finding that the remainder of the Career Status Bonus was used to pay marital debts.  Exhibit 3 is Jeffrey's explanation of how he spent the money he received from the Career Status Bonus.  In Exhibit 3, Jeffrey lists the expenses in one column and lists his and Danielle's shares of the expenses in two separate columns.  As represented in Exhibit 3, Jeffrey only assigned shares of three expenses to Danielle.  The expenses Jeffrey assigned to Danielle included half of the amount Jeffrey spent to pay off the van loan, half of the orthodontics bill, and half of the amount spent on van repairs (the amounts for these expenses are disputed by the parties).  The remaining expenses were assigned to Jeffrey alone.  Therefore, according to Jeffrey's own calculations, $8,244.06 of the Career Status Bonus was used to pay for Jeffrey's personal expenses that are not attributable to Danielle.

[¶17.]        In addition, Jeffrey testified about Exhibit 3 at trial.  He acknowledged that some of the expenditures were "for himself," but stated that other expenses were "joint debts."  However, when Jeffrey's counsel asked him about the expenditures, Jeffrey agreed that Danielle and his children benefitted in some way from the extra money Jeffrey had as a result of having paid off some of the debts with the $30,000 Career Status Bonus.

[¶18.]        The trial court's finding that money from the Career Status Bonus was used to pay for other "marital debts" is inconsistent with the contents of Exhibit 3. In Exhibit 3 Jeffrey admits that some of the expenditures were for personal

expenses, not marital debts. As a result, the trial court's reference to Exhibit 3 in the finding of fact makes the finding of fact unclear. Therefore, on remand the trial court should clarify what amount (if any) of the Career Status Bonus constitutes marital property subject to equitable distribution.

[¶19.]    **2.    Whether the trial court abused its discretion by failing to equitably distribute the marital property.**

[¶20.]    "When dividing the money or property of the parties the trial court must make a fair and just award considering all the material factors." *Herrboldt v. Herrboldt*, 303 N.W.2d 571, 572 (S.D. 1981) (quoting *Hanks v. Hanks*, 296 N.W.2d 523, 527 (S.D. 1980)). A trial court considers the following factors when distributing martial property:

> (1) duration of the marriage; (2) the value of the property owned by the parties; (3) the age of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the property owned by the parties.

*Grode v. Grode*, 1996 S.D. 15, ¶ 10, 543 N.W.2d 795, 800 (citing *Johnson v. Johnson*, 471 N.W.2d 156, 159 (S.D. 1991)). "The trial court must make the division of property on the basis of these principal factors while having due regard for equity and the circumstances of the parties." *Herrboldt*, 303 N.W.2d at 572 (quoting *Hansen v. Hansen*, 273 N.W.2d 749, 751 (S.D. 1979)).

[¶21.]    The record does not indicate that the trial court considered any of these factors before distributing the property. The only time the trial court did address some of these factors was in relation to Danielle's request for alimony, which the trial court denied. Further, the trial court's consideration of alimony

occurred after it had already divided the property. As a result, there is no indication that the trial court considered these factors in relation to the property distribution even though the trial court addressed some of the factors briefly in rationalizing its decision for denying Danielle's request for alimony.

[¶22.] The result of the trial court's distribution of the property was that Jeffrey received approximately 90 percent of the property while Danielle only received 10 percent. Because the trial court failed to address the property distribution factors on the record, there is no way to evaluate why the trial court's distribution of property was disproportionate, or whether this disproportionate distribution was equitable based on the circumstances of the parties. In addition, the trial court's failure to assign values to the marital property before distributing it further impedes this Court's ability to review whether the property distribution was equitable.

[¶23.] It is true that the trial court generally awarded Danielle the marital property she requested. However, the trial court did not order Jeffrey to make an equalization payment to offset the disparity in the award. Further, the trial court did not explain why it did not order an equalization payment. Because the trial court failed to address the property distribution factors in its division of property and failed to assign values to the property, this Court is incapable of reviewing whether the trial court's disproportionate division of property was equitable. Therefore, in addition to assigning values to the property, on remand the trial court should also reassess its division of property based upon consideration of the factors described above.

[¶24.]    **3.    Whether the trial court abused its discretion by failing to order Jeffrey to pay Danielle child support arrearages of $310 per month for the months of January 2010 through October 2011.**

[¶25.]    SDCL 25-7-6.1 addresses a parent's obligation to support his or her children and an absent parent's liability for a "continued absence from the home." According to the statute:

> The parents of a child are jointly and severally obligated for the necessary maintenance, education, and support of the child in accordance with their respective means. Until established by a court order, the minimum child support obligation of a parent who fails to furnish maintenance, education, and support for his child, following a continued absence from the home, is the obligor's share of the amount shown in the support guidelines, commencing on the first day of the absence. For the purposes of this section, 'continued absence from the home,' means that the parent or child is physically absent from the home for a period of at least thirty consecutive days, and that the nature of the absence constitutes family dissociation because of a substantial severance of marital and family ties and responsibilities, resulting in the child losing or having a substantial reduction of physical care, communication, guidance, and support from the parent.

SDCL 25-7-6.1.

[¶26.]    The trial court ordered Jeffrey to pay $1,310 per month as child support beginning on November 1, 2011. From August 2008 until implementation of the trial court's order in November 2011, Jeffrey voluntarily paid Danielle $1,000 per month as child support. Danielle argues that SDCL 25-7-6.1 supports her claim for child support arrearages of $310 ($1,310 minus $1,000) per month for the months of January 2010 through October 2011. She asserts the statute applies because she and Jeffrey were not living together during that time, and Jeffrey paid $310 less per month than what the trial court later determined he owed under the

child support guidelines. According to Danielle, she is entitled to a total sum of $6,820.

[¶27.]    SDCL 25-7-6.1 applies to a parent "who fails to furnish maintenance, education, and support for [his] child . . . ." In determining that an award of child support arrearages was unfounded, the trial court stated during its oral recitation of its findings of fact and conclusions of law that: "[t]he children have been supported by the father. There's been no order previously entered in this matter as to what child support should be. [Danielle] received benefits both through his military connection and through him personally." In this case, Jeffrey supported his children for the entirety of the marriage. Jeffrey voluntarily paid Danielle $1,000 per month to support his children before he was deployed in January 2010, and continued to make monthly $1,000 payments to Danielle until the trial court granted the parties a divorce.

[¶28.]    Further, Danielle and the children lived in the parties' home on the Air Force base intermittently throughout the marriage, including during a portion of the time Danielle claims she is entitled to receive child support arrearages. The family was able to live in on-base housing due to Jeffrey's employment with the Air Force. While living there, Danielle had no rent or utility payments. In addition, Jeffrey forfeited military food and housing allowances he would have received had the family not lived on base. By paying Danielle $1000 a month as child support and providing housing for her and the children, Jeffrey did not fail to furnish maintenance and support for his children.

[¶29.] Next, SDCL 25-7-6.1 applies to situations involving a parent that is "continually absent from the home." In this case, Danielle asserts Jeffrey's conduct satisfies the statutorily defined "continued absence from the home" standard because she and Jeffrey did not live together from the time of his deployment in January 2010 to the parties' divorce in November 2011. However, the fact that Jeffrey and Danielle had separate living arrangements does not automatically establish that Jeffrey was continually absent from the home. From January 2010 through June 2010 Jeffrey was deployed. Although Jeffrey was physically absent from the home for more than 30 days, the reason he was away from home was because he was fulfilling his obligations to the military. Under these circumstances, his absence did not constitute a "family dissociation" due to "a substantial severance of marital and family ties and responsibilities."

[¶30.] When Jeffrey returned from fulfilling his military obligations in July 2010, Danielle moved out of their home on the Air Force base. After that time, Danielle maintained primary physical custody of the children, but she and Jeffrey agreed to a visitation schedule. Although Jeffrey did not always utilize his time with the children, there is no indication that Jeffrey "substantially severed family ties and responsibilities." Because Jeffrey continuously provided his children with maintenance and support and because his conduct does not meet SDCL 25-7-6.1's definition of a "continued absence from the home," SDCL 25-7-6.1 is not applicable in this case. Therefore, the trial court did not abuse its discretion in denying Danielle's request for child support arrearages of $310 per month for the months of January 2010 through October 2011.

[¶31.] **4. Whether the trial court abused its discretion by failing to award Danielle attorney fees.**

[¶32.] Generally, trial courts may award attorney fees in cases involving divorce, support, or alimony. SDCL 15-17-38. A two-step analysis is typically used by courts in determining whether to award attorney fees. *Urbaniak v. Urbaniak*, 2011 S.D. 83, ¶ 31, 807 N.W.2d 621, 628.

> First, the court must determine what constitutes a reasonable attorney's fee. This requires consideration of (1) the amount and value of the property involved, (2) the intricacy and importance of the litigation, (3) the labor and time involved, (4) the skill required to draw the pleadings and try the case, (5) the discovery utilized, (6) whether there were complicated legal problems, (7) the time required for the trial, and (8) whether briefs were required. Second, it must determine the necessity for such fee. That is, what portion of that fee, if any, should be allowed as costs to be paid by the opposing party. This requires consideration of the parties' relative worth, income, liquidity, and whether either party unreasonably increased the time spent on the case.

*Id.* (quoting *Edinger v. Edinger*, 2006 S.D. 103, ¶ 17, 724 N.W.2d 852, 858).

[¶33.] In this case, Danielle requested that the trial court order Jeffrey to pay her attorney fees of $7,208. The trial court denied this request, and ordered the parties to pay their own attorneys' fees. A review of the record establishes that the trial court did not conduct the two-step analysis used to determine whether to award attorney fees when it denied Danielle's request for attorney fees. In contrast, the trial court denied Danielle's request for attorney fees without explanation. In light of this Court's decision to reverse and remand on other issues, on remand the trial court should reconsider the award of attorney fees under the two-step analysis set forth by this Court.

[¶34.] Further, Danielle requests an award of appellate attorney fees. Upon consideration of the factors described above, Danielle is not entitled to an award of appellate attorney fees. Therefore, Danielle's Motion for Appellate Attorney Fees is denied.

## CONCLUSION

[¶35.] The trial court did not abuse its discretion in denying Danielle's request for child support arrearages because the statute Danielle cited as authority for an arrearages award was not applicable in this case. Therefore, we affirm on this issue. However, the trial court did abuse its discretion in failing to assign values to the parties' property before distributing it. Additionally, because the trial court failed to value the property and failed to articulate its rationale for the disproportionate property division, this Court is incapable of reviewing whether the trial court's division of property was equitable. As a result, we reverse on the property valuation and distribution issues, and remand to the trial court for further proceedings consistent with this opinion.

[¶36.] KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.