#27196-rev & rem-SLZ

**2015 S.D. 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,
EX REL., FATIMA K. TEGEGNE                    Plaintiff and Appellee,

    v.

TADESSE M. ANDALO,                            Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SUSAN M. SABERS
Judge

* * * *

RICHARD L. JOHNSON
Sioux Falls, South Dakota                     Attorney for plaintiff
                                              and appellee.


STEVEN K. RABUCK of
Nichols & Rabuck, PC
Sioux Falls, South Dakota                     Attorneys for defendant
                                              and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MAY 26, 2015

OPINION FILED **07/01/15**

ZINTER, Justice

[¶1.] Fatima Tegegne (Mother) brought an action against Tadesse Andalo (Father) to establish Father's child support obligation and to determine arrearages. With respect to arrearages, a child support referee recommended that Father receive a credit for mortgage payments as well as for food, clothing, and school supplies Father had purchased for the children while he was absent from the home. The circuit court adopted the recommendation in part and rejected it in part. The court gave Father no credit for mortgage payments and food, but it allowed a credit for clothing and school supplies. Father appeals the denial of credit for the mortgage payments and food. We reverse and remand to accept the referee's recommendation.

*Facts and Procedural History*

[¶2.] Mother and Father lived together, had two children, but never married. During the course of the relationship, Father made a down payment on a house, and Mother and Father each paid one-half of the mortgage payments. After they separated, Mother obtained physical custody of the children. Father obtained his own housing and has been absent from the familial home ever since. Father, however, continued to pay one-half of the mortgage payments. When the house was later sold, Mother and Father divided the proceeds equally.

[¶3.] Mother subsequently brought this action to establish Father's child support obligation and to determine arrearages. The circuit court approved the child support referee's recommendation for future support in the full amount required by the child support guidelines. That award has not been appealed.

[¶4.]    Father's appeal arises out of the circuit court's rejection of the referee's recommendation that Father receive a credit for the mortgage payments and food he allegedly provided when he was absent from the home.[1] In the proceedings below, Father requested that he receive a credit for the mortgage payments as well as for food, clothing, school supplies, and other items he provided the children after the parties' separation. Father testified and introduced bank statements, sales receipts, and other documentation to support his request. Mother, however, objected to a credit for the mortgage payments and food.[2] She contended that Father had no right to a credit for mortgage payments, and she disputed that food was provided to the children. She did agree that Father provided the other items for the children.

[¶5.]    The referee determined that Father's child support arrearages for the time he was absent from the home would have been $26,130 if the calculation were made under the child support guidelines. The referee, however, determined that Father should be given the credits he requested because his expenditures constituted "maintenance, education, and support" of the children within the meaning of the statute governing child support arrearages. *See* SDCL 25-7-6.1.

---

1.    This matter was considered by the referee on two occasions. On the first occasion, the referee recommended a credit for a number of things, including the mortgage payments and food. The circuit court remanded for reconsideration. The referee conducted a new evidentiary hearing and affirmed his prior recommendation.

2.    Mother also contended that any credit for the mortgage should be reduced by the amount Father received from the sale of the house. However, Mother and Father divided the proceeds of the sale equally. Additionally, Mother has not pursued this argument on appeal. Therefore, we decline to address the issue.

And because the credits were greater than the scheduled child support, the referee recommended that Father owed no arrearages. In making his recommendation, the referee specifically found Mother's assertion that Father never purchased food for the children was not credible.

[¶6.] The circuit court rejected the referee's recommended credit for the mortgage payments. The court noted that Father was "financially bound to make those mortgage payments due to a separate, binding financial obligation to which he and [Mother], as non-married persons, had voluntarily agreed." The court further noted that Father received benefits from the mortgage payments because they increased his equity in the house, which increased the amount of his proceeds from the sale of the house.

[¶7.] The circuit court also rejected the referee's recommended credit for food purchases. The court relied on Mother's general denial that Father provided food. The circuit court concluded that the referee clearly erred in finding that Mother's testimony was not credible. The court did, however, allow Father a credit for the school supplies, clothing, and other items that Mother did not dispute were provided.

[¶8.] Thus, the court ordered Father to pay $23,165.68, the scheduled amount of arrearages less a credit for the school supplies, clothing, and other items that Mother agreed Father had purchased for the children ($26,130 scheduled support − $2,964.32 credits = $23,165.68). Father appeals the circuit court's disallowance of mortgage payments (a credit of $25,517.97). Father also appeals

the court's conclusion that the referee clearly erred in finding that Father purchased food for the children (a credit of $2,241.08).

*Decision*

[¶9.]     We generally "review the decision to grant or deny child support under the abuse of discretion standard." *Kauth v. Bartlett*, 2008 S.D. 20, ¶ 8, 746 N.W.2d 747, 750. However, "[w]hen reviewing a child support referee's findings of fact, we review for clear error, while conclusions of law are reviewed de novo." *Id.* "Findings are not reversed for clear error 'unless we are left with a definite and firm conviction a mistake has been made.'" *Id.* (quoting *Wagner v. Wagner*, 2006 S.D. 31, ¶ 5, 712 N.W.2d 653, 656).

*Mortgage Payments*

[¶10.]     SDCL 25-7-6.1 obligates parents, who are absent from the home, to pay child support for their children. If they fail to furnish "maintenance, education, and support" for their children, they are obligated to pay the minimum amount required by the child support guidelines. SDCL 25-7-6.1.[3] Thus, the question is the extent to which Father, when absent from the home, failed to furnish "maintenance,

---

3.     SDCL 25-7-6.1 provides in relevant part:

> The parents of a child are jointly and severally obligated for the necessary maintenance, education, and support of the child in accordance with their respective means. Until established by a court order, the minimum child support obligation of a parent who fails to furnish maintenance, education, and support for his child, following a continued absence from the home, is the obligor's share of the amount shown in the support guidelines, commencing on the first day of the absence.

education, and support" for his children. If he failed to do so, he is liable for the amount called for under the child support guidelines. *See id.*

[¶11.]       Mother argues that, in considering whether Father failed to maintain and support his children, SDCL 25-7-6.1 does not allow consideration of money he paid directly to the mortgagee. Mother points out that the mortgage payments went to the bank, not to her. Mother also contends that a mortgage is a separate legal obligation that should not be considered absent the parties' agreement. Mother points out that Father received benefits from his mortgage payments in the form of tax benefits and accumulating equity. Thus, Mother argues that mortgage payments may not be considered in making an arrearage determination under SDCL 25-7-6.1. We disagree.

[¶12.]       By making the mortgage payments, Father assisted in providing housing for the children. We have considered the provision of housing as maintenance and support for determining child support arrearages under SDCL 25-7-6.1. *See Huffaker v. Huffaker*, 2012 S.D. 81, ¶ 28, 823 N.W.2d 787, 793-94 (stating that by "providing housing for [the custodial parent] and the children, [Huffaker] did not fail to furnish maintenance and support for his children"). We have also considered housing as maintenance and support in the closely related area of spousal support. *See Wilson v. Wilson*, 434 N.W.2d 742, 744 (S.D. 1989) (stating that "support and maintenance" includes "the provision of food, clothing, *habitation*, and other necessities" (emphasis added)). Other courts considering the mortgage-payments issue have specifically held that such payments should be considered a

credit against child support arrearages even though the payments are made to the mortgagee.[4]

[¶13.] Mother, however, points out that the obligor in *Huffaker* provided military housing at no cost. *Huffaker*, 2012 S.D. 81, ¶ 28, 823 N.W.2d at 793-94.

---

4. *See Shaughnessy v. Shaughnessy*, 1999 WL 692085 (Del. Fam. Ct. 1999) (affording father credit in the amount of $7,571.42 against back child support for mortgage payments made to the mother and/or the mortgage holder); *Lynch v. Lynch*, 422 So. 2d 703, 706 (La. Ct. App. 1982) (reversing a circuit court's deletion of father's credit for house payments); *Lauria v. Lauria*, 845 N.Y.S.2d 121, 122 (N.Y. App. Div. 2007) (holding that the court "erred in failing to credit [father's] child support account for the entire amount that he paid for the [mother's] mortgage"); *Fogarty v. Fogarty*, 725 N.Y.S.2d 673, 675 (N.Y. App. Div. 2001) (permitting father to offset accrued child support arrearages by the amount of payments made on the marital residence); *Crane v. Crane*, 694 N.Y.S.2d 763, 767 (N.Y. App. Div. 1999) (permitting father to offset accrued child support arrearages in the amount of payments made on the marital residence); *Neumark v. Neumark*, 468 N.Y.S.2d 43, 44 (N.Y. App. Div. 1983) (holding that the lower court failed to account for payments made in connection with the marital home, including mortgage payments); *In re Marriage of Stearns*, 623 N.E.2d 711, 718 (Ohio Ct. App. 1993) (finding no error in permitting a deviation from the child support guidelines for the payment of the mortgage, taxes, insurance, and maintenance for the former marital residence); *Bradley v. Bradley*, 564 A.2d 504, 507 (Pa. Super. Ct. 1989) (holding that it was within the court's discretion to credit father's arrearages for one-half of the mortgage payments that he made); *Knudson v. Utah State Dep't of Soc. Servs.*, 660 P.2d 258, 262 (Utah 1983) (holding that the Department was not entitled to reimbursement for support payments when the father's housing payments during the pendency of the divorcee exceeded what was due even though it augmented the father's own equity). *Cf. Farmer v. Farmer*, 249 S.E.2d 106, 109 (Ga. 1978) (allowing father to receive credit for mortgage payments based on the agreement of the parties); *Payson v. Payson*, 442 N.E.2d 1123, 1129 (Ind. Ct. App. 1982) (allowing father to receive credit for rent payments made after the support decree based on the agreement of the parties); *Hodge v. Hodge*, 338 So. 2d 161, 162 (La. Ct. App. 1976) (allowing the father to make mortgage payments to mortgage holder in partial satisfaction of child support based upon an agreement of the parties). *Contra Abercrombie v. Abercrombie*, 434 So. 2d 1139, 1142 (La. Ct. App. 1983), writ denied, 440 So. 2d 760 (La. 1983) (holding that mortgage payments should not be regarded as child support because it was a contractual legal obligation that built father's equity).

Mother also points out that the obligor paid an additional $1,000 per month to the obligee. *Id.* Because the children in *Huffaker* were supported by cash payments and free housing, Mother contends that *Huffaker* is distinguishable. But neither of these facts detracts from the central point that the provision of housing constitutes maintenance and support, which is what is required to be considered in determining arrearages under SDCL 25-7-6.1.

[¶14.] Moreover, Mother's position is inconsistent with the meaning of "maintenance" and "support" in SDCL 25-7-6.1. Clearly, housing is necessary to maintain and support children. *See Huffaker*, 2012 S.D. 81, ¶ 28, 823 N.W.2d at 793-94. And there is nothing in SDCL 25-7-6.1 or our cases suggesting that, when there is no order specifying the manner of making support, an obligor's support may only be made by cash payments to the obligee.[5] Indeed, the circuit court gave Father credit for the clothing, school supplies, and other items he provided. We finally see no significance in the fact that Father had a contractual obligation to pay

---

5. We have recognized, in a variety of contexts, that support obligations not paid in conformance with existing support orders are improper. *See Vander Woude v. Vander Woude*, 501 N.W.2d 361, 364 (S.D. 1993) (noting that "this [C]ourt does not look favorably upon agreements to modify child support that have not received the court's approval"); *Houser v. Houser*, 535 N.W.2d 882, 884-85 (S.D. 1995) (disapproving a modification under which father did not make payments to the clerk of courts, even though mother had informally agreed to the modification of the order); *Agee v. Agee*, 1996 S.D. 85, ¶ 21, 551 N.W.2d 804, 806-07 (rejecting a claim for abatement due to a change in time of actual custody, noting that the obligor was required to request the circuit court for the modification). Today's case does not involve payments made in a manner different than that required under an existing child support order or divorce decree. This case should not be interpreted to permit credits for maintenance or support that is not provided in conformance with existing support orders. Obligors must obtain court-approved modifications before deviating from the terms of existing support orders and decrees.

the mortgage. Housing is necessary to support children, and it makes no difference whether the housing is provided in an owned home or through mortgages, leases, or other contractual arrangements.

[¶15.] In this case, Father paid one-half the cost of the house by making one-half of the monthly mortgage payments. Further, Mother and the children received the benefit of the payments. Mother and the children chose to continue occupying the house after the parties separated. Therefore, Father's mortgage payments must be considered maintenance and support of the children in determining arrearages under SDCL 25-7-6.1.

[¶16.] Mother's reliance on *Hirzel v. Ooten*, 2010 Ohio 2206, 2010 WL 1987519 (Ohio Ct. App., May 12, 2010), is misplaced. *Hirzel* involved a proceeding to determine ongoing support. The trial court ordered that, in lieu of ongoing child support required under the guidelines, the obligor was to directly pay mortgage payments and lawn care services without providing any cash to the obligee. *Id.* ¶ 20. The court also awarded obligor sole ownership of the residence, including possession of that residence when the child turned eighteen or graduated from high school. *Id.* The Ohio Court of Appeals noted that under this order, the custodial parent was deprived of "discretion . . . in how to allocate the child support for the minor child." *Id.* ¶ 21. The appeals court also noted that the child's need for clothing and food clearly outweighed the need for lawn care services. *Id.* ¶ 22. The appeals court concluded that the trial court abused its discretion in allowing these "deviations" from the child support guidelines in a proceeding to determine ongoing support. *Id.* In today's case, Mother was awarded the full amount of ongoing child

support required under the guidelines, and we are not considering deviations from those guidelines. Therefore, Mother retained the discretion to allocate support among various necessities of the children. Furthermore, the children in this case were not placed in the position of being deprived of clothing and food at the expense of lawn care. *Hirzel* is not helpful in cases like this involving a determination of a parent's maintenance and support provided before any order of support had been entered.

*Food*

[¶17.]     Mother and Father presented conflicting evidence on the question whether Father provided food for the children. After listening to the testimony of both parties, the referee examined Father's receipts and found that Mother's assertions were not credible. The referee noted that the receipts were evidence that Father purchased food; and Mother did not offer any evidence, other than a general denial, contradicting Father's claim that the food was purchased for the children. The circuit court reversed, concluding that the referee clearly erred in adopting Father's assertion that he had provided food for the children. Father argues that the circuit court erred in overturning the referee's credibility finding.

[¶18.]     "A circuit court may not overturn a referee's findings unless the record reflects that, based upon its own review of all the evidence, the court is left with a definite and firm conviction that a mistake has been made." *Tovsland v. Reub*, 2004 S.D. 93, ¶ 12, 686 N.W.2d 392, 397 (quoting *Janke v. Janke*, 467 N.W.2d 494, 497 (S.D. 1991)). In this case, the circuit court accepted Mother's general assertion that Father "never provide[d] . . . food or groceries from Wal Mart for the children[.]" We

note, however, that Mother also testified that "when [Father] would go out with the kids, they always . . . [brought] . . . some kind of food[.]" Mother also conceded that the children would bring back stuff, but she did not know what the children brought back. Mother also testified that she did not go with Father when he had the children so "she ha[d] no way to know where he [took] them." On the other hand, Father—who had first-hand knowledge of his purchases—testified that he "spen[t $2,241.08] for food for the children." Father explained that he would "go with [their] daughter over to Wal Mart. She picked up what she liked . . . and [he brought the food] back to [the children's] home." Father provided receipts to support his testimony.

[¶19.] Considering the factual basis underlying the testimony of each party, a resolution of this credibility dispute was a matter for the referee as the fact finder. "[A]s we have often noted, 'the fact finder . . . ha[s] the advantage of hearing testimony of witnesses and [can] directly judge their credibility. As a reviewing court, neither the circuit court nor this Court should attempt to assume such a role.'" *Orth v. Stoebner & Permann Constr., Inc.*, 2006 S.D. 99, ¶ 77, 724 N.W.2d 586, 602 (second alteration in original) (quoting *Hendricksen v. Harris*, 1999 S.D. 130, ¶ 7, 600 N.W.2d 180, 181).

[¶20.] Here, the circuit court was not in a better position than the referee to determine the credibility of Mother and Father. After considering the evidence introduced at the evidentiary hearing, we are not left with a definite and firm conviction that the referee clearly erred in making his credibility finding. The circuit court erred in concluding otherwise.

[¶21.]      Reversed and remanded to adopt the recommendation of the referee.

[¶22.]      GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN,

Justices, concur.