2000 SD 137

**Betty Ann PESICKA, Plaintiff and Appellant,**

v.

**Gerald Gary PESICKA, Defendant and Appellee.**

No. 21303.

Supreme Court of South Dakota.

Considered on Briefs Sept. 18, 2000.

Decided Nov. 1, 2000.

Patrick M. Ginsbach of Farrell, Farrell and Ginsbach, Hot Springs, South Dakota, Attorneys for plaintiff and appellant.

Richard A. Johnson of Strange Farrell & Johnson, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

SABERS, Justice

[¶ 1.] The Judgment and Decree of Divorce incorporated a Stipulation and

Agreement providing for the division of Gary's teacher retirement benefit. The circuit court held that the provision was a clear and unambiguous statement of the amount Betty was to receive and refused to set aside the provision or award interest pursuant to SDCL 15–6–60(b)(6). Betty appeals. We affirm.

## FACTS

[¶ 2.] Gary and Betty were divorced on October 1, 1985 after twenty-eight years of marriage. Both parties were represented by counsel in the divorce proceedings. Counsel for Betty drafted the provision on the division of Gary's teacher retirement benefit. It provides that:

> When Gary draws his teacher's retirement or becomes 65 years of age, whichever is first, the parties shall divide the present teacher retirement benefit equally, that amount is $12,092.87.

This provision was accepted by Gary and was subsequently incorporated into the Judgment and Decree of Divorce. At the time the agreement was drafted $12,092.87 was the amount of Gary's contributions to the retirement account, as opposed to the total value of benefits to be received upon retirement.

[¶ 3.] Betty asserts that this provision is ambiguous. She argues that a contradiction exists between the language utilized in the agreement ("teacher retirement benefit") and the dollar figure representing the contribution amount. Based on this alleged ambiguity she sought to have a Qualified Domestic Relations Order (QDRO) issued for the benefits earned during marriage. Gary opposed, maintaining that the provision only entitles her to half of the amount of contributions made during the marriage ($12,092.87) as stated therein.

1. Betty contends that the decree should be set aside or interest granted under the "catchall provision" of SDCL 15–6–60(b)(6). That statute provides in relevant part:
   > On motion and upon such terms as are just, the court may relieve a party or his legal

[¶ 4.] A hearing was held to determine if a QDRO should be issued, or in the alternative, if the Judgment and Decree should be set aside to award Betty a monthly benefit amount or interest on the lump sum amount.[1] The circuit court held that "although the terminology used in the paragraph misspeaks in referring to the 'phrase present teacher retirement' the paragraph is clear and unambiguous as to the amount to be divided, i.e. $12,092.87." The circuit court denied the motion to enter the QDRO or set aside the original Judgment and Decree.

[¶ 5.] Betty appeals contending: (1) A QDRO should have been entered based on the ambiguity in the language of the provision; and, (2) relief should have been granted pursuant to SDCL 15–6–60(b)(6). Gary made a timely motion for an award of appellate attorney fees in the amount of $1,290.32.

## STANDARD OF REVIEW

[¶ 6.] "Contractual stipulations in divorce proceedings are governed by the law of contracts." *Houser v. Houser*, 535 N.W.2d 882, 884 (S.D.1995). The interpretation of a contract is a question of law and is reviewed de novo. *Hayes v. Northern Hills General Hosp.*, 1999 SD 28, ¶ 62, 590 N.W.2d 243, 254. When the meaning of contractual language is plain and unambiguous, construction is not necessary. If a contract is found to be ambiguous the rules of construction apply. *Alverson v. Northwestern Nat. Cas. Co.*, 1997 SD 9, ¶ 8, 559 N.W.2d 234, 235. "Whether the language of a contract is ambiguous is ... a question of law." *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 151 (S.D.1986); *see also Overfield v. American Underwriters Life Ins. Co.*, 2000 SD 98, ¶ 12, 614 N.W.2d 814, 816.

representative from a final judgment, order, or proceeding for the following reasons:
6) Any other reason justifying relief from the operation of the judgment.

**[¶ 7.] 1. WHETHER A QDRO SHOULD ISSUE FOR HALF THE AMOUNT OF THE RETIREMENT BENEFIT EARNED DURING MARRIAGE.**

[¶ 8.] We must first determine whether the provision is ambiguous. "A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct." *Alverson,* 1997 SD 9, ¶ 8, 559 N.W.2d at 235 (citations omitted).

[¶ 9.] "In determining the proper interpretation of a contract the court must seek to ascertain and give effect to the intentions of the parties." *Singpiel v. Morris,* 1998 SD 86, ¶ 10, 582 N.W.2d 715, 718. The intention of the parties is determined by "look[ing] to the language the parties used." *Id.* "If that intention is clearly manifested by the language of the [Stipulation and Agreement], it is the duty of this court to enforce it." *In Re Estate of Stevenson,* 2000 SD 24, ¶ 14, 605 N.W.2d 818, 821.

[¶ 10.] In determining ambiguity we have stated:

A contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract. Rather, a contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.

*Singpiel,* 1998 SD 86, ¶ 16, 582 N.W.2d at 719 (citations omitted).

[¶ 11.] Applying these principles to the language of the Stipulation and Agreement no ambiguity exists. The provision states that "the parties shall divide the present teacher retirement benefit equally, that amount is $12,092.87." The use of the word "benefit" here does not refer to future monthly installments from Gary's retirement account, but is instead used to refer to the amount that will be divided. The language of the provision then clearly specifies that this "benefit" or the amount to be divided is $12,092.87.

[¶ 12.] In interpreting the meaning of this provision we are bound by the words chosen by the parties. The language used here supports a determination that the amount indicated was to be divided equally "[w]hen Gary draws his retirement or becomes 65 years of age." That amount was clearly $12,092.87. The provision does not create "a genuine uncertainty as to which of two or more meanings is correct." *Alverson,* 1997 SD 9, ¶ 8, 559 N.W.2d at 235. If no ambiguity exists our inquiry ends. *See Overfield,* 2000 SD 98, ¶ 26, 614 N.W.2d at 820.

[¶ 13.] Both parties have urged us to apply varying rules of construction to the language of the provision. Yet, "the prerequisite to all of these rules of construction is that some ambiguity or doubt must exist about the meaning of the contract and the intent of the parties." *Middleton v. Klingler,* 410 N.W.2d 184, 186 (S.D. 1987). Finding no ambiguity we reject this invitation.[2] *See Overfield,* 2000 SD 98, ¶ 15, 614 N.W.2d at 817.

[¶ 14.] We affirm issue 1.

**[¶ 15.] 2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO SET ASIDE THE PROVISION, OR BY FAILING TO GRANT INTEREST ON THE LUMP SUM AMOUNT UNDER SDCL 15–6–60(b)(6).**

[¶ 16.] In the alternative, Betty requests that if the provision is found unam-

---

2. Even if an ambiguity existed it would be construed against Betty as her counsel drew the provision. *Singpiel,* 1998 SD 86, ¶ 18, 582 N.W.2d at 720. Betty's assertion that the husband controlled the reporting of the amount does not detract from this fact.

Additionally, even if we were to consider the conduct of the parties after the provision was drafted to establish intent, the most significant example was that in 1986 another attorney for Betty argued in her brief to reevaluate alimony that "[t]he parties agreed to equally divide the Husband's retirement benefit of $12,092.87 at the time Husband draws it or becomes 65, each then to receive $6,046.43."

biguous "the Court award her a monthly benefit or at least interest on the lump sum of $6,056.43." She asserts that SDCL 15–6–60(b)(6) supports such a result.

[¶ 17.] SDCL 15–6–60(b)(6)[3] provides an equitable remedy when a party "seeks extraordinary relief." *Hrachovec v. Kaarup*, 516 N.W.2d 309, 310 (S.D.1994). "Relief under SDCL 15–6–60(b) is granted only upon a showing of exceptional circumstances." *Id.* "The purpose of Rule 60(b) is to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscious that justice be done in light of all the facts." *Id.* at 311 (citations omitted).

[¶ 18.] Any decision to grant or deny such relief "rests within the sound discretion of the trial court and will not be disturbed on appeal except for abuse." *Id.* It has not been shown that the circuit court abused its discretion in finding no "exceptional circumstances" on these facts.

[¶ 19.] We affirm issue 2.

■ [¶ 20.] Gary made a motion for an award of appellate attorney fees. He submitted an affidavit and itemized statements reflecting his attorney fees and costs to be $1290.32. *See Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985). In determining if a party is entitled to attorney fees, we consider "property owned by each party, their relative incomes, the liquidity of the assets, and whether either party unreasonably increased the time spent on the case." *Abrams v. Abrams*, 516 N.W.2d 348, 352 (S.D.1994) (citations omitted). Considering these factors and the inability of Betty to pay attorney fees and costs, we decline to award them.

[¶ 21.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

---

**3.** See supra note 1 for the relevant text of SDCL 15–6–60(b).