#26411-a-DG

**2013 S.D. 27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MICHELE K. ROSETH
n/k/a MICHELE K. HOLIEN,                    Plaintiff and Appellee,

    v.

CALVIN A. ROSETH,                           Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RONALD K. ROEHR
Judge

* * * *

THOMAS M. FRANKMAN
TIMOTHY M. GEBHART of
Davenport, Evans, Hurwitz
  & Smith, LLP
Sioux Falls, South Dakota                   Attorneys for plaintiff
                                            and appellee.


RAYMOND D. RYLANCE of
Wiles & Rylance, LLP
Watertown, South Dakota
and
DAVID L. GANJE
Rapid City, South Dakota                    Attorneys for defendant
                                            and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 12, 2013

OPINION FILED **03/27/13**

GILBERTSON, Chief Justice

[¶1.]      Calvin Roseth and Michele Holien entered into an agreement regarding payment of their children's post-high school educational expenses as part of their divorce.  Calvin and Michele's youngest child Jason pursued a double major in college and took five years to complete his undergraduate degree.  Additionally, during Jason's fifth year of college, Jason was accepted into several two-year master's degree programs in the field of music performance.  At the end of Jason's senior year of college, Calvin began disputing his obligation to continue paying his share of Jason's educational expenses.  Michele argued that the terms of the parties' agreement required Calvin to pay his share of Jason's expenses for Jason's fifth year of college, as well as for Jason's first year of graduate school.  The circuit court found that the parties' agreement was unambiguous, and ordered Calvin to pay his share of the expenses associated with Jason's fifth year of undergraduate studies and Jason's first year of graduate school.  Calvin appeals.

## FACTS

[¶2.]      Calvin and Michele divorced in 1997.  As part of their divorce, Calvin and Michele entered into a Stipulation and Agreement (the Agreement) on July 15, 1997.  The Agreement was incorporated into the parties' Judgment and Decree of Divorce.  Paragraph 19 of the Agreement provides:

> In the event either child of the parties enrolls as a full time student in a recognized and accredited institution of higher education or vocational training within nine months following graduation from high school, each party shall pay his or her pro-rata share of room, board, tuition, fees, and books, until completion of said course of study or age 25, whichever first occurs.  The pro-rata share of each parent shall be equal to the

percentage which would be utilized for calculation of child
support if the same were to be calculated at that time.

[¶3.] Calvin and Michele had three children during their marriage. The parties' oldest daughter attended Augustana College for approximately two-and-a-half years, and their other daughter obtained a four-year degree from Northern State University. Calvin and Michele paid their respective shares of the girls' room, board, tuition, fees, and books (educational expenses) during those years. Jason Roseth is the parties' youngest child. He was born on September 5, 1988. Calvin's payment of his pro-rata share[1] of Jason's educational expenses is the subject of this appeal.

[¶4.] Jason graduated from high school in the spring of 2007. In the fall of 2007, Jason began attending Augustana College in Sioux Falls, South Dakota, as a music major with an emphasis on trombone performance. Jason's career goal was to become a professional musician and to play professionally in a symphony. On the advice of his instructor, Vance Shoemaker, Jason added accounting as a second major during his sophomore year of college.[2] Shoemaker recommended that Jason add a second major because it was difficult for music performance majors to get a job and make a career out of performing. In accordance with the terms of the

---

1. At the time of this dispute, Calvin's pro-rata share of Jason's educational expenses was 71 percent, and Michele's pro-rata share was 29 percent.

2. Calvin was unaware of Jason's addition of the accounting major, as the two had not been in contact for several years.

Agreement, Calvin paid his pro-rata share of Jason's educational expenses during Jason's freshman, sophomore, junior, and senior years of college.[3]

[¶5.]     On May 5, 2011, Calvin received a letter from Michele updating Calvin on Jason's plan to continue his education.  Up until this point, Calvin believed Jason would be graduating from Augustana College with a degree in music in May 2011.  In the letter, Michele informed Calvin that Jason would not be graduating in May 2011.  Instead, Michele informed Calvin that: Jason was registered for the first summer session at Augustana College; Jason would be attending Augustana College in the fall to complete a fifth year of undergraduate studies; and Jason planned to attend graduate school following his graduation in May 2012.  After receiving Michele's letter, Calvin requested a copy of Jason's transcript.  Upon reviewing Jason's transcript, Calvin believed Jason should have been able to graduate from Augustana College in May 2011 with a music major.

[¶6.]     In order to receive an undergraduate degree from Augustana College, a student must complete a total of 130 credit hours.  Approximately 60 of these credits are general education requirements (core classes) that all students must complete.  To obtain a bachelor of arts in music, 45 of the 130 credits must be in music.[4]  Further, to obtain a degree in accounting, a student must complete 31

---

3.     By the end of the spring 2011 semester (Jason's senior year of college), Calvin had made all payments except for a payment of $412.72, which was his pro-rata share of expenses that stemmed from some of Jason's spring 2011 accompaniment and book/supply costs and a portion of Jason's summer book costs.

4.     There are certain music classes that satisfy the 45-credit requirement.

credits, plus 14 additional hours of supporting credits, for a total of 45 credits. Thus, for a student to graduate with a double major in music and accounting, the student must complete a total of 150 credits.

[¶7.]      By the end of the spring of 2011, Jason had completed 141 credit hours. Seventy of those credits were in music, and Jason admitted that as of May 2011 he had completed all courses required to obtain his music major. However, despite having more credits than necessary for a music degree, Jason was not eligible for graduation in May 2011 because he had not completed three core classes he was required to complete in order to obtain a bachelor's degree. Specifically, Jason still needed to complete a speech course, a religion course, and a capstone course in order to be eligible for graduation. The capstone course, which students typically took during their senior year, was offered every fall semester, interim, spring semester, and summer session. Additionally, the speech and religion courses were offered each semester, and Jason could have taken these courses any year.[5] Calvin believed Jason chose not to take these required courses in order to prolong his education.

[¶8.]      Ultimately, Jason completed the required speech and religion courses during the summer session in 2011. During the fall of 2011, Jason took 6 credits that were required for his accounting major, and 6 credits that were music electives. The music electives were not required in order for Jason to obtain his bachelor's degree. Calvin believed Jason took these credits in order to maintain his status as a

---

5.      At the hearing, Sharon Neish (the Assistant Registrar at Augustana College) clarified that the religion course could be taken any time after a student's first year of college.

full-time student, which was a condition of Calvin's payment of Jason's educational expenses pursuant to Paragraph 19 of the Agreement. Further, although the capstone course was offered during the summer session, fall semester, and interim, Jason did not complete the required capstone course until the spring 2012 semester. In addition to the 3-credit capstone course, Jason took 4 credits that were required for his accounting major, and 5 credits of unrequired music electives during the spring of 2012. Jason graduated from Augustana College in May 2012 after completing a total of 167 credits.

[¶9.] On June 3, 2011 (after Jason finished his senior year at Augustana), Calvin filed a motion requesting a determination that he had satisfied his obligation to pay his pro-rata share of Jason's educational expenses. Alternatively, if the circuit court determined that he had not satisfied his obligation as of May 2011, he requested that the circuit court determine his obligation for continued payment of Jason's educational expenses. At the same time, Calvin deposited his share of Jason's summer 2011 educational expenses with the clerk of courts. The parties later agreed that Calvin would not be required to pay any additional money to the clerk of courts during the pendency of the action. On March 13, 2012 (during the spring semester of Jason's fifth year at Augustana), Michele filed a motion requesting that the circuit court enforce Paragraph 19 of the Agreement.

[¶10.] The circuit court held a hearing on April 5, 2012, to address the parties' motions. Calvin testified that he understood the phrase "course of study" within Paragraph 19 of the Agreement to mean an undergraduate degree with a single major. Calvin argued that because Jason should have completed his "course

of study" by graduating with a music major in May 2011 (but intentionally prolonged his graduation by putting off three core classes), Calvin was no longer obligated to pay his pro-rata share of the educational expenses Jason incurred after May 2011. Alternatively, Michele testified that "course of study" was not intended to be confined to an undergraduate degree in a single major, but instead included an undergraduate degree with multiple majors and also included graduate school. Thus, Michele argued that Calvin was obligated to pay his pro-rata share of Jason's educational expenses for the summer 2011 session, the fall 2011 semester, the spring 2012 semester, and the first year of Jason's two-year master's degree program.[6]

[¶11.] In addition to their own testimony and testimony from Jason, during the hearing both parties presented testimony from witnesses[7] in support of their respective understandings of Paragraph 19 of the Agreement. The circuit court reserved ruling on objections to the admission of various parol evidence during the hearing, subject to its later determination of whether or not Paragraph 19 of the Agreement was ambiguous. Ultimately, the circuit court determined that

---

6. As Jason will turn 25 before his second year of graduate school, Michele admits that Calvin is not obligated to pay for Jason's second year of graduate school pursuant to Paragraph 19 of the Agreement.

7. Sharon Neish, the Assistant Registrar at Augustana College, testified that a "course of study" was one major leading towards a bachelor's degree. Vance Shoemaker, a music instructor at Augustana College, testified that Jason's "course of study" was music performance, and that Jason could not complete his "course of study" and achieve his goal of being a professional musician without attending graduate school. Shoemaker also testified that the accounting major was necessary to Jason's "course of study" due to the difficulties associated with making a career out of music performance.

Paragraph 19 of the Agreement was unambiguous and that all parol evidence was consequently inadmissible. Further, the circuit court concluded that the phrase "course of study" was broad and was not restricted to an undergraduate degree or one major. As a result, the circuit court granted Michele's motion. On June 15, 2012, the circuit court entered an order (along with findings of fact and conclusions of law) requiring Calvin to pay his pro-rata share of Jason's educational expenses for the summer 2011 session, the fall 2011 semester, the spring 2012 semester, and for Jason's graduate school until Jason turned 25. The circuit court also ordered Calvin to pay the $412.72 he owed from the spring of 2011, along with some other expenses. Calvin appeals, arguing the circuit court erred in concluding that Paragraph 19 of the Agreement obligated him to pay his pro-rata share of Jason's educational expenses for the summer 2011 session, Jason's fifth year of undergraduate studies, and Jason's first year of graduate school.

## ANALYSIS AND DECISION

[¶12.] **Whether the circuit court erred in determining that Paragraph 19 of the Agreement was unambiguous, and that Calvin was required to pay his pro-rata share of Jason's educational expenses for the summer 2011 session, Jason's fifth year of college at Augustana, and Jason's first year of graduate school.**

[¶13.] "Contractual stipulations in divorce proceedings are governed by the law of contracts." *Duran v. Duran*, 2003 S.D. 15, ¶ 7, 657 N.W.2d 692, 696 (quoting *Pesika v. Pesika*, 2000 S.D. 137, ¶ 6, 618 N.W.2d 725, 726). "Contract interpretation is a question of law reviewable de novo." *Pankratz v. Hoff*, 2011 S.D. 69, ¶ 10 n.1, 806 N.W.2d 231, 235 n.1 (quoting *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354). "Because we can review the contract as easily as the trial court, there is no presumption in favor of the trial

court's determination." *Id.* (quoting *Ziegler Furniture*, 2006 S.D. 6, ¶ 14, 709 N.W.2d at 354). Further, "whether the language of a contract is ambiguous is a question of law for the court, which is reviewable de novo." *LaMore Rest. Grp., LLC v. Akers*, 2008 S.D. 32, ¶ 31, 748 N.W.2d 756, 765 (citing *All Star Constr. v. Koehn*, 2007 S.D. 11, ¶ 33, 741 N.W.2d 736, 744).

[¶14.] "In determining the proper interpretation of an agreement incorporated into a divorce decree, a court must seek to ascertain and give effect to the intention of the parties." *Kier v. Kier*, 454 N.W.2d 544, 547 (S.D. 1990) (citing *Malcolm v. Malcolm*, 365 N.W.2d 863, 865 (S.D. 1985)). Further, "[i]n determining the intention of the parties, the Court must look to the language that the parties used." *Id.* (quoting *Malcolm*, 365 N.W.2d at 865). "When the meaning of contractual language is plain and unambiguous, construction is not necessary." *Pesika*, 2000 S.D. 137, ¶ 6, 618 N.W.2d at 726 (citing *Alverson v. Nw. Nat.'l. Cas. Co.*, 1997 S.D. 9, ¶ 8, 559 N.W.2d 234, 235). This is because "the intent of the parties can be derived from within the four corners of the contract." *Vander Heide v. Boke Ranch, Inc.*, 2007 S.D. 69, ¶ 37, 736 N.W.2d 824, 835 (citing *Spring Brook Acres Water Users Ass'n, Inc. v. George*, 505 N.W.2d 778, 780 n.2 (S.D. 1993)). However, "[i]f a contract is found to be ambiguous the rules of construction apply." *Pesika*, 2000 S.D. 137, ¶ 6, 618 N.W.2d at 726.

[¶15.] "A contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract." *Vander Heide*, 2007 S.D. 69, ¶ 37, 736 N.W.2d at 836 (quoting *Pesika*, 2000 S.D. 137, ¶ 10, 618 N.W.2d at 727). Instead, "a contract is ambiguous only when it is

capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (quoting *Pesika*, 2000 S.D. 137, ¶ 10, 618 N.W.2d at 727). If a writing is found to be ambiguous, parol evidence "is admissible to *explain* the instrument." *LaMore Rest. Grp.*, 2008 S.D. 32, ¶ 30, 748 N.W.2d at 764 (quoting *Jensen v. Pure Plant Food Int'l Ltd.*, 274 N.W.2d 261, 264 (S.D. 1979)). However, "parol or extrinsic evidence may not be admitted to vary the terms of a written instrument or to add or detract from the writing." *Arrowhead Ridge I, LLC v. Cold Stone Creamery, Inc.*, 2011 S.D. 38, ¶ 13, 800 N.W.2d 730, 734 (quoting *Brookings Mall, Inc. v. Captain Ahab's, Ltd.*, 300 N.W.2d 259, 262 (S.D. 1980)). Thus, parol evidence "is resorted to where the ambiguity may be dispelled to show what the parties meant by what they said but not to show that they meant something other than what they said." *Id.* (quoting *Brookings Mall*, 300 N.W.2d at 262).

[¶16.] The outcome of this case essentially hinges upon the interpretation of the phrase "course of study" as used within Paragraph 19 of the Agreement. The circuit court concluded Paragraph 19 of the Agreement was unambiguous, and gave the phrase "course of study" a broad construction. On appeal, both parties argue that the phrase "course of study" is unambiguous[8] and that the plain meaning of the phrase reinforces their divergent interpretations of Paragraph 19 of the Agreement. As a matter of law, we disagree. Instead, we find that the phrase

---

8.  Michele argues in the alternative that even if the phrase "course of study" as used within Paragraph 19 of the Agreement is ambiguous, parol evidence supports Michele's claim that "course of study" was not meant to be limited to the completion of an undergraduate degree with a single major.

"course of study" as used within Paragraph 19 of the Agreement is ambiguous.[9] As a result, parol evidence is admissible to explain the meaning of Paragraph 19 of the Agreement.

[¶17.] Although the circuit court ultimately excluded all parol evidence, the circuit court allowed parol evidence to be presented at the parties' motions hearing subject to the circuit court's later ruling on the admissibility of the evidence. Thus, this Court has a sufficient record from which we can determine the meaning of "course of study" as used within Paragraph 19 of the Agreement. At the hearing, Calvin testified that age 25 was used in Paragraph 19 of the Agreement to allow the parties' children to take a break from their undergraduate studies and still be able to receive payments from Calvin and Michele if they later resumed those studies before turning 25.

[¶18.] In contrast, Michele testified the parties used the language requiring each parent to pay his or her pro-rata share of the children's educational expenses "until completion of said course of study or age 25, whichever first occurs" in Paragraph 19 of the Agreement based upon the ambitions of the parties' oldest daughter, who entered college in 1998 as a biology major. Michele testified that the parties' oldest daughter had always intended to go to medical school and become a

---

9. In Calvin's reply brief, he argues that if Paragraph 19 of the Agreement is found to be ambiguous, this Court should apply the rule of construction that requires any ambiguities in a contract to be construed against the party that drafted the contract. Calvin asserts that Michele drafted Paragraph 19 of the Agreement, and thus any ambiguity should be construed against her. However, the circuit court made no findings on this issue, and from the record it is unclear who drafted Paragraph 19 of the Agreement. Thus, Calvin's argument does not affect our resolution of this case.

physician. With their daughter's goals in mind, Michele testified that the parties used the phrase "course of study" with the intent that the parties would pay for their daughter to complete her education. Further, Michele explained that the parties agreed to use age 25 in Paragraph 19 of the Agreement because they knew a degree in medicine required several years of schooling beyond an undergraduate education. The parties' oldest daughter was 17 at the time she entered college in 1998. Given that medical school typically takes four years, the parties' oldest daughter would have turned 25 during her final year of medical school. Thus, Michele argues that Paragraph 19 of the Agreement was intended to encompass more than an undergraduate education.

[¶19.] As additional support for her understanding of Paragraph 19 of the Agreement, Michele offered evidence that in December 1998, Calvin proposed that the parties change the age limit in Paragraph 19 of the Agreement from 25 to 23. Michele did not agree to the change. In September 1999, Calvin again requested that the age limit in Paragraph 19 of the Agreement be changed. The second time he requested changing the age limit from 25 to 22. Michele also rejected this proposal. Michele asserts that this evidence supports her claim that the parties' obligations under Paragraph 19 of the Agreement were not limited to their children's undergraduate educations. Michele asserts that Calvin's attempt to lower the age limit suggests that Calvin changed his mind about wanting to pay for the children's educational expenses beyond the undergraduate level.

[¶20.] Overall, we conclude that the parol evidence presented at the hearing supports Michele's claim that "course of study" as used within Paragraph 19 of the

Agreement includes graduate school. Therefore, under Paragraph 19 of the Agreement, Calvin is obligated to pay his pro-rata share of Jason's master's degree program educational expenses until Jason turns 25.

[¶21.] Next, we reject Calvin's claim that the phrase "course of study" as used within Paragraph 19 of the Agreement is limited to the completion of one major. Upon reviewing the parol evidence introduced by Michele, there is no indication that the parties meant for the phrase "course of study" to be limited to a single major. Further, at the hearing, Shoemaker testified that he recommended Jason add an accounting major because it was difficult to make a career out of performing music. Additionally, Shoemaker testified he recommended a double major to every music performance major he ever worked with because the field was so competitive. Thus, Shoemaker believed a double major was a necessary component of a "course of study" in music performance. In light of this testimony, we conclude that the phrase "course of study" as used within Paragraph 19 of the Agreement was not limited to a single major, and that Jason's accounting major was encompassed within Jason's "course of study" in music performance.

[¶22.] We also reject Calvin's claim that he is not obligated under Paragraph 19 of the Agreement to pay for Jason's educational expenses associated with the 2011 summer session, the fall 2011 semester, and the spring 2012 semester because Jason should have been able to graduate with a music major in May 2011. Instead, we conclude that the courses Jason took during the summer of 2011, the fall of 2011, and the spring of 2012 were all part of Jason's "course of study" in music performance. As discussed above, the phrase "course of study" as used within

Paragraph 19 of the Agreement includes Jason's accounting major. Because the accounting credits Jason took during his fifth year at Augustana were all required in order for Jason to complete his accounting major, these credits were part of Jason's "course of study" in music performance. In addition, Jason was required to complete the speech, religion, and capstone courses in order to receive his undergraduate degree from Augustana College, making these credits part of Jason's "course of study" in music performance.

[¶23.] Further, although the music electives Jason took during his fifth year at Augustana were not required, these credits were nonetheless part of Jason's "course of study" in music performance. At the hearing, Shoemaker explained that practice was essential to a "course of study" in music performance. He testified that these additional music credits were beneficial to Jason because they gave him more practice and allowed him to improve his playing abilities. Therefore, we conclude that Calvin is required to pay his pro-rata share of Jason's educational expenses for the 2011 summer session, the fall 2011 semester, and the spring 2012 semester, as the credits Jason completed during these terms were part of his "course of study" in music performance.

## CONCLUSION

[¶24.] The phrase "course of study" as used within Paragraph 19 of the Agreement is ambiguous, making parol evidence admissible to explain the meaning of Paragraph 19 of the Agreement. The parol evidence presented at the parties' motions hearing establishes that Paragraph 19 of the Agreement was intended to include graduate school and was not limited to an undergraduate education. In

addition, Calvin is obligated to pay his pro-rata share of Jason's educational expenses for the summer 2011 session and Jason's fifth year of college at Augustana, as the credits Jason completed during this time period were part of his "course of study" in music performance.  Therefore, we affirm.

[¶25.]        KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.