#30011-aff in pt & rev in pt-MES
**2023 S.D. 70**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MICHAEL R. ERICKSON,                             Plaintiff and Appellant,

    v.

TARA J. ERICKSON,                                Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

* * * *

TRESSA ZAHRBOCK KOOL of
Lockwood & Zahrbock Kool Law Office
Sioux Falls, South Dakota             Attorneys for plaintiff and
                                          appellant.


THOMAS H. FRIEBERG
AUSTIN J. FELTS of
Frieberg, Nelson & Ask
Beresford, South Dakota             Attorneys for defendant
                                          and appellee.

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 15, 2023
OPINION FILED **12/28/23**

SALTER, Justice

[¶1.] Former spouses, Michael Erickson and Tara Erickson, executed a Stipulation and Agreement (the Agreement) in 2020 to settle issues associated with their divorce action. The circuit court accepted the Agreement and incorporated it into a judgment and decree of divorce. Believing the Agreement authorized it, Tara has claimed the parties' two minor children as dependents when filing her federal income tax returns since 2018. However, in 2022, Michael cited what he believed to be contrary language in the Agreement and asserted for the first time that he was entitled to claim the children as dependents. He moved to enforce the Agreement and hold Tara in contempt. Tara subsequently moved to "modify" the divorce decree and Agreement, asserting the language Michael identified contained a mistake. She also sought an award of attorney fees.

[¶2.] The circuit court determined that the provision of the parties' Agreement upon which Michael was relying was the result of a drafting error. Consequently, the court denied Michael's requests for relief and granted Tara's motion to revise the text of the Agreement and for attorney fees. We affirm in part, reverse in part, and remand for further proceedings.

## Factual and Procedural History

[¶3.] Michael originally commenced this divorce action as a pro se plaintiff in June 2018. Both parties ultimately engaged counsel to assist them. Sioux Falls attorneys James Billion and Nichole Carper assisted Michael and Tara, respectively. The parties undertook negotiations and a mediation session in an attempt to resolve issues relating to property division and the custody of their two

minor children.  Michael and Tara eventually executed the Agreement, with the stated purpose of settling "the issues of custody, child support, division of property, assumption of financial obligations, and alimony . . . ."  The Agreement was incorporated into the circuit court's judgment and decree of divorce, which was filed in April 2020.

[¶4.]        A single provision in the Agreement is at the center of this appeal. Paragraph 2.g. reads, "For tax year 2018 and each year after that, *Plaintiff* shall be entitled to claim [the two minor children] as dependents and head of household for Federal, State, or Local tax purposes."  (Emphasis added.)  As indicated, Michael was the plaintiff in the divorce action, and Tara was the defendant.  But notwithstanding paragraph 2.g., Tara claimed both of the children as dependents in the 2018, 2019, and 2020 tax years, all without any objection from Michael.

[¶5.]        However, in February 2022, Michael filed a motion through different counsel to enforce paragraph 2.g. of the Agreement and to find Tara in contempt for violating the circuit court's judgment and decree of divorce.  Tara, also represented by a new attorney, responded and filed a motion to amend the judgment and decree of divorce "to clarify that . . . Tara Erickson[ ] is entitled to claim the minor children as dependents for purposes of tax filing."  Tara's supporting brief invoked the circuit court's authority to grant relief from judgments contained in SDCL 15-6-60(a) (Rule 60(a)) and SDCL 15-6-60(b) (Rule 60(b)).  Tara also requested an award of attorney fees.

[¶6.]        In Tara's view, her claiming the children as dependents reflected the actual intent and understanding of the parties at the time the Agreement was

executed. She offered several arguments that the Agreement itself, when read as a whole, revealed that the use of the word "Plaintiff" was a "mistake[.]"

[¶7.] First, she argued that paragraph 2.g. reflected a legal impossibility because it also purported to grant head of household status to Michael—something Tara asserted is contrary to federal tax law which, she claimed, does not allow a "non-custodial parent to claim head of household filing status[.]" Second, she argued that the designations of Plaintiff and Defendant only appear in paragraph 2.g. while the Agreement otherwise refers to the parties as Father and Mother, supporting the conclusion that Tara's counsel at the time "failed to catch the inadvertent reference to Plaintiff[.]" Finally, Tara pointed to a notation in an attached joint property exhibit stating, "credit card debt 2018 taxes; Tara had the children more than 50% of the time during 2018, she is entitled to claim the children on her tax return."

[¶8.] At the subsequent motions hearing, Tara also offered extrinsic evidence regarding the parties' discussions and negotiations leading up to the execution of the Agreement. For instance, the court found that emails between the original attorneys revealed that Tara's lawyer insisted that her client should either be able to claim the children as dependents or be "made whole" in the event Michael was to claim the children because he could make greater use of claiming the children as dependents given his higher income.[1]

---

1.    The parties exchanged a draft of the Agreement that included a provision stating Michael, designated as the "Plaintiff," could claim the children as dependents and file for head of household, subject to certain requirements. In essence, Michael could pay for tax preparation services for himself as well

(continued . . .)

[¶9.]    Recalling her representation of Tara during these discussions, Nichole Carper testified that "honestly, [ ] from my understanding of everything and the way we proceeded through everything mother would claim the kids. There was never any issue on that." Regarding the language to the contrary in paragraph 2.g., Carper stated, "[I]t's so easy to make that mistake, and unfortunately that language just didn't get caught."[2]

[¶10.]    In addition, Tara offered evidence of the parties' conduct in the years following the execution of the Agreement and divorce. This included the fact that Tara claimed the children as dependents in 2018, 2019, and 2020 with no objection from Michael. Tara also introduced evidence of unrelated parenting disputes between the parties and characterized Michael's motion as "retaliation" for these disagreements, stating, "Apparently, he had not reviewed the provision until our recent disputes."

---

(. . . continued)

as Tara in order to demonstrate the relative value of claiming the children as dependents based on each party's respective income. Using this information, Michael could then claim the children as dependents if he paid Tara for the value she would have received by claiming them. However, the designations for the parties varied within the draft provision, and, critically, it was not fully incorporated into the Agreement. The part of this draft language designating "the Plaintiff" as entitled to claim the children as dependents was incorporated into paragraph 2.g., but the balance of the draft provision containing the "tax benefit maximizing" language, which referred to the parties as "Mother" and "Father," was not.

2.    Carper explained that the misstep was likely due to the fact that she represents many mothers who are plaintiffs in divorce actions and that her office used a stipulation and agreement from a different divorce as a template when drafting the Agreement.

[¶11.]     As it related to Michael's motion for contempt, Tara denied that she "willfully ignored the court's order by filing your tax return in 2018, '19 and '20 claiming the children and head of household status[.]"  Tara further offered that she "was told over, and over, and over by Nichole" that she could claim the children as dependents.

[¶12.]     For his part, Michael asserted that the Agreement unambiguously granted him the right to claim the children as dependents and file as head of household.  Based on his view that the Agreement lacked ambiguity, he argued that no extrinsic evidence should be considered to determine the parties' intent behind the Agreement.

[¶13.]     Notwithstanding this position, Michael's prior attorney, James Billion, testified about his recollection of the parties' negotiations.  According to Billion, which party would claim the children as dependents "was always an issue from the outset . . . ."  Billion recalled the discussions with Carper, but he was unsure about the accuracy of paragraph 2.g. stating, "I can't speak with a hundred percent certainty that the exemption issue at hand is, is not a clerical error, although I do know with a hundred percent certainty that throughout the course of the proceedings and the negotiations that the item was addressed at various times."

[¶14.]     Responding to Tara's argument that he took no action to enforce his view of the Agreement in the 2018, 2019, and 2020 tax years, Michael explained that he was attempting to not "rock the boat" with Tara in light of their other ongoing disagreements.  He maintained that he always understood that the Agreement entitled him to claim the children as dependents.

[¶15.] As for his contempt motion, Michael did not offer evidence other than the fact that Tara had claimed the children as dependents. He offered a related argument claiming that Tara was further acting in defiance of the divorce decree by not cooperating with his demand to file the necessary paperwork to enable him to claim the children as dependents.[3] In closing remarks, Michael's current attorney argued that Tara "needs to be held to this agreement."

[¶16.] At the conclusion of the hearing, the circuit court ruled in Tara's favor on each of the motions before it. Starting with the motion to clarify the decree and the corresponding Agreement, the court determined that the "evidence is crystal clear, and beyond clear and convincing that [the disputed provision] was a mistake." The court further ruled that "all the surrounding circumstances, all of the exhibits, all of the evidence and testimony, establishes really beyond any reasonable doubt that there is a typo in the stipulation and in paragraph 2.g. The word plaintiff was supposed to be defendant, and [ ] everybody overlooked it, and missed it because it wasn't even ever really a debatable issue."[4]

---

3. Because Tara has the children more than 50% of the time, she is considered the custodial parent and would have to complete an IRS Form 8332 in order to allow Michael to claim the children as dependents. *See Armstrong v. Comm'r*, 745 F.3d 890, 892 (8th Cir. 2014); *see also* 26 U.S.C. 152(e) (describing procedure for custodial parent releasing claim to dependent exemption).

4. As part of its determination that paragraph 2.g. contained a mistake, the circuit court noted that the additional authority for the "Plaintiff" to file a tax return as the head of household reflected a legal impossibility because Michael could not, in any event, claim head of household status under federal law. Michael has not challenged the court's determination in this regard.

[¶17.] The circuit court continued, "It was intended by all parties . . . that mother was going to retain her right to claim the children under federal law, and when her lawyer goofed up and didn't correct that error in the final draft, [Michael] figured, [']well, I'm not going to tell anybody about this.['] And [ ] [']I may use it to my advantage someday.[']" As part of this analysis, the court discounted Michael's contrary evidence and found that his testimony was not credible.

[¶18.] The court then explained its procedural path for correcting the Agreement:

> [W]e're operating under Rule 60(b). If we were going under 60(b)(1), we would be limited to one year [ ] and I think that if we have to go under 60(b)(1), I think that father's delay in raising the issue tolls the running of that statute of repose until the mistake was discovered by the party that was prejudiced by that, which was discovered by her when brought to her attention by the father . . . and, otherwise, I still believe that we are operating under 60(b)(6).

[¶19.] Consistent with the circuit court's reasoning on the motion to amend the Agreement, the court denied Michael's motion for contempt, describing the motion as "essentially frivolous" and finding that Tara "did not make any willful or contumacious decision to disobey the judgment and decree of divorce. She was doing in good faith [what] she understood the agreement to be."

[¶20.] Finally, the circuit court granted Tara's motion for attorney fees. The court reasoned that "[w]e shouldn't be here, and she shouldn't have to pay for it. [Michael] tried to take advantage of the situation, and he should have to pay for it." In its order approving the final attorney fees amount, the court described the fee request of $4,803.43 as reasonable and incorporated Tara's attorney's affidavit,

which also summarily described the fees as "reasonable." There were no additional

findings regarding the reasonableness of the attorney fees.

[¶21.]     Michael appeals, asserting several issues for review, restated as

follows:

> 1.     Whether it was necessary for the circuit court to rely upon Rule 60(b) in order to interpret and clarify the divorce decree.
>
> 2.     Whether the circuit court erred when it concluded that the parties' Agreement was ambiguous.
>
> 3.     Whether the circuit court clearly erred when it found that the parties intended in their Agreement to allow Tara to claim the children as dependents for tax purposes.
>
> 4.     Whether the circuit court abused its discretion when it granted Tara's request for attorney fees.

## Analysis and Decision

### *Application of Rule 60(b)*

[¶22.]     The circuit court invoked Rule 60(b) as the means of considering the

parties' conflicting claims about the meaning of paragraph 2.g. The parties'

arguments on appeal similarly treat the Rule 60(b) issue as a necessary predicate to

reaching the textual interpretation issue.[5] But we are reluctant to simply accept

that premise and condition our ability to reach the merits of this appeal upon the

outcome of a Rule 60(b) analysis.

---

5.     In addition to Rule 60(b), Tara's arguments before the circuit court cited Rule 60(a), which allows relief from judgments containing clerical mistakes. The circuit court relied upon Rule 60(b) only, and Tara has not argued on appeal that the court erred by not using Rule 60(a) as a basis for its decision.

[¶23.] We have not previously confronted the question whether a basis for relief from an order or judgment under Rule 60(b) is necessary for a circuit court to clarify a divorce decree based upon a stipulation between the parties. In *Divich v. Divich*, we referenced Rule 60(b) principles, as the parties had, and held that the circuit court abused its discretion by concluding the parties' divorce stipulation was ambiguous, but our analysis turned on contract principles, not an application of Rule 60(b). 2002 S.D. 24, ¶¶ 8–11, 640 N.W.2d 758, 760–62. We applied the same essential contract rules in *Roseth v. Roseth* to interpret a stipulation incorporated into the parties' divorce decree regarding funding for their children's education, without any reference to Rule 60(b). 2013 S.D. 27, ¶¶ 13–17, 829 N.W.2d 136, 142–43.

[¶24.] We begin our inquiry into the court's authority by noting the importance of an order's clarity. In addition to setting out the terms under which the parties to litigation must abide, an order's ultimate utility depends upon its enforceability. As we have often held, a court may not use its civil contempt power to enforce an order or judgment unless the "order . . . state[s] the details of compliance in such clear, specific and unambiguous terms that the person to whom it is directed will know exactly what duties or obligations are imposed upon her." *Evens v. Evens*, 2020 S.D. 62, ¶ 47, 951 N.W.2d 268, 283 (quoting *Keller v. Keller*, 2003 S.D. 36, ¶ 9, 660 N.W.2d 619, 623).

[¶25.] Consequently, it is natural that courts would, from time to time, find it necessary to clarify the meaning of their orders or judgments, whether these are the product of a court's own deliberative effort or an agreement of the parties that the

court incorporates. But there is a distinction between this sort of clarification and a modification of the order from its intended meaning to something new and different:

> A "motion for clarification" is just what the name implies: a request for an explanation from the trial court as to the meaning of a prior, allegedly unclear, order. A "motion for clarification" does not seek to persuade the trial court that a prior judgment should be changed, modified, or invalidated. If it does seek to do any of those things, then it is not a "motion to clarify" a judgment, but a motion to alter, amend, or vacate a judgment . . . .

*Muellen v. Ritter*, 96 So. 3d 863, 868 (Ala. Civ. App. 2012) (citations omitted).

[¶26.] Here, the parties did not seek relief from the divorce decree by changing or modifying it; they sought clarification regarding its meaning.[6] And for this reason, we hold that the circuit court was authorized to interpret and clarify the decree, which incorporated the Agreement, without the need to invoke Rule 60(b).[7] The Supreme Judicial Court of Maine has stated a practical set of rules that we find particularly instructive here:

> When a settlement agreement is incorporated into a divorce judgment, the settlement agreement becomes part of the judgment of the divorce court. If the divorce judgment is ambiguous, the court has the inherent and continuing authority to construe and clarify its judgment, but it cannot under the guise of a clarification order make any material change that will modify the property division provided by the original judgment. . . . When we review an order purporting to clarify a

---

6. Though styled a motion to "modify," Tara's actual arguments make clear that she was seeking to clarify—not substantively change—the original stipulation which the circuit court incorporated into the decree.

7. Though state courts lack authority under federal law to "award dependent exemptions . . ., once the parties have stipulated to a [dependent tax exemption] provision and incorporated it into their divorce agreement, the court has authority to approve or reject the agreement." *Jacobson v. Jacobson*, 2000 S.D. 60, ¶ 13, 611 N.W.2d 210, 214–15.

> divorce judgment, we will affirm that order if the court's prior judgment was ambiguous as a matter of law . . . and . . . the court's construction of its prior judgment is consistent with its language read as a whole and is objectively supported by the record.

*Greenwood v. Greenwood*, 746 A.2d 358, 360–61 (Me. 2000) (cleaned up).[8]

[¶27.]		In this case, then, our first task is to consider whether the parties' Agreement contains an ambiguity.  If it does not, there is no need for construction, and we must simply apply the text.  *Coffey v. Coffey*, 2016 S.D. 96, ¶ 9, 888 N.W.2d 805, 809 (citing *Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 6, 618 N.W.2d 725, 726).  However, if the Agreement is ambiguous, we must use our well-settled rules of construction to determine its meaning.  *Id.*  Our test for ambiguity is more than a function of the parties' disagreement:

> A contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract.  Rather, a contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.

*Id.* (quoting *Dowling Fam. P'ship v. Midland Farms*, 2015 S.D. 50, ¶ 13, 865 N.W.2d 854, 860).

### *Ambiguity within the Agreement*

[¶28.]		"Contractual stipulations in divorce proceedings are governed by the law of contracts[.]"  *Roseth*, 2013 S.D. 27, ¶ 13, 829 N.W.2d at 142 (quoting *Duran v. Duran*, 2003 S.D. 15, ¶ 7, 657 N.W.2d 692, 696).  Generally, "[t]he 'existence of a

---

8.	The *Greenwood* court also held that the "intent of the divorce court" controls in the effort to resolve an ambiguity "in a divorce judgment," though "the intent of the parties" is relevant in determining the court's intent.  746 A.2d at 361 n.4.

valid contract is a question of law[,]' which is reviewed de novo." *Koopman v. City of Edgemont*, 2020 S.D. 37, ¶ 14, 945 N.W.2d 923, 927–28 (quoting *Behrens v. Wedmore*, 2005 S.D. 79, ¶ 20, 698 N.W.2d 555, 566).

[¶29.]     "If in dispute, however, the existence and terms of a contract are questions for the fact finder." *Id.* (quoting *Behrens*, 2005 S.D. 79, ¶ 20, 698 N.W.2d at 566). "We review the circuit court's findings of fact under the clearly erroneous standard of review." *Wiseman v. Wiseman*, 2015 S.D. 23, ¶ 6, 863 N.W.2d 243, 245. In reviewing factual determinations for clear error, we will only set the circuit court's factual determination aside "if we are left with a definite and firm conviction that a mistake has been made." *In re Estate of Eichstadt*, 2022 S.D. 78, ¶ 19, 983 N.W.2d 572, 580 (quoting *Action Mech., Inc. v. Deadwood Hist. Pres. Comm'n*, 2002 S.D. 121, ¶ 12, 652 N.W.2d 742, 748).

[¶30.]     Whether this case involves a purely legal determination of the existence of a contract or a factual question relating to disputed contract terms turns largely upon what evidence the court could consider. Ordinarily, we would read the text of an agreement as a whole and give effect to its terms as a matter of law. *Coffey*, 2016 S.D. 96, ¶ 8, 888 N.W.2d at 809. However, where the text reveals an ambiguity, courts may consider extraneous, or parol, evidence "to show what the parties meant by what they said but not to show that they meant something other than what they said." *Roseth*, 2013 S.D. 27, ¶ 15, 829 N.W.2d at 142–43 (quoting *Arrowhead Ridge I, LLC v. Cold Stone Creamery, Inc.*, 2011 S.D. 38, ¶ 13, 800 N.W.2d 730, 734).

[¶31.]	Here, the Agreement contained a conspicuous ambiguity. Though paragraph 2.g. purported to allow Michael as "the Plaintiff" to claim the children as dependents and file as head of household "[f]or tax year 2018 and each year thereafter," other text contained in the parties' joint property exhibit expressed a different intent. The joint property exhibit was incorporated as part of the Agreement and included an entry that stated Tara "is entitled to claim the children on her tax return" in 2018—the same year identified in paragraph 2.g. as the commencement for claiming the children as dependents. This conflict results in a genuine ambiguity concerning which party was entitled to claim the children as dependents.

[¶32.]	Reading the exhibit's "more than 50% of the time" rationale together with the "Custody" section of the Agreement—providing that Tara would continue to have the children more than 50% of the time—further reveals the ambiguity. A reasonable interpretation of the notation on the schedule of the Agreement is that having the children more than 50% of the time entitles that parent to claim the children as dependents *in each successive year*,[9] creating tension with paragraph 2.g.[10]

---

9.	This view corresponds with federal law. *See* 26 U.S.C. § 152(e)(B) (providing that if, among other things, a "child is in the custody of 1 or both of the child's parents for more than one-half of the calendar year, such child shall be treated as being the qualifying child" for dependent exemption purposes).

10.	The Agreement's use of "Plaintiff" in paragraph 2.g. and "Mother" and "Father" elsewhere does not, itself, constitute an ambiguity, but it could be relevant to whether paragraph 2.g. accurately reflected the parties' intent.

*Factual inquiry into the parties' intent*

[¶33.]　　　With an ambiguity established, the circuit court was authorized to consider parol evidence in order to determine whether the parties intended that Tara would claim the children as dependents.  The court's corresponding analysis focused upon the testimony and the evidence the parties presented.  As a result, we will apply our deferential clear error standard of review and "give due regard to the [trial] court's opportunity to observe the witnesses" and determine "[t]he credibility of the witnesses."  *Stockwell v. Stockwell*, 2010 S.D. 79, ¶ 24, 790 N.W.2d 52, 61 (first alteration in original) (citation omitted); *see also Peterson v. Issenhuth*, 2014 S.D. 1, ¶ 15, 842 N.W.2d 351, 355 ("On review, this Court defers to the circuit court, as fact finder, to determine the credibility of witnesses and the weight to be given to their testimony." (quoting *Hubbard v. City of Pierre*, 2010 S.D. 55, ¶ 26, 784 N.W.2d 499, 511)).

[¶34.]　　　Performing its quintessential fact-finding role, the court weighed the conflicting parol evidence concerning the parties' intent and found:

> The actions of the parties, the credible testimony of Tara and the certainty with which Carper acknowledged that a mistake was made in the drafting of paragraph 2.g. of the Stipulation and Agreement are all consistent with the parties believing and intending that Tara would be entitled to claim the minor children as dependents and file with head of household status.

[¶35.]　　　The circuit court expressly rejected Michael's contrary factual assertions and made an adverse credibility determination:

> Michael testified that he knew that the Stipulation and Agreement allowed him to claim the minor children as dependents and for head of household filing purposes but did not mention it in 2018, 2019 or 2020 because he did not want to

"rock the boat[.]"[ ] Michael's testimony in this regard is not credible.

[¶36.] This finding takes on additional significance when considered with the operative text of paragraph 2.g., which pairs the claiming of the children as dependents with the federal income tax head of household status:

> For tax year 2018 and each year after that Plaintiff shall be *entitled to claim [the two minor children] as dependents and head of household* for Federal, State, or Local tax purposes.

(Emphasis added.)

[¶37.] This provision can only be interpreted as an acknowledgement that the *same person* was "entitled to claim" the children as dependents *and* the head of household designation. But, as Tara alleges and Michael does not dispute, Michael is ineligible to claim head of household status, supporting the circuit court's view that he was also not the person entitled to claim the children as dependents. *See* 26 U.S.C. § 2(b) (definition of head of household).

[¶38.] Under the circumstances presented here, the circuit court's finding that the parties intended the Agreement to allow Tara to claim the children as dependents was not clearly erroneous. And though the parties and the court relied upon Rule 60(b), rather than simply interpreting its own judgment, any error was not consequential because it did not prevent the court from undertaking the correct inquiry regarding the Agreement. *See Bunkers v. Jacobson*, 2002 S.D. 135, ¶ 23, 653 N.W.2d 732, 739 ("Where a judgment is correct, this court will not reverse although it was based on incorrect reasons or erroneous conclusions." (quoting *Poindexter v. Hand Cnty.*, 1997 S.D. 71, ¶ 16, 565 N.W.2d 86, 91)).

### Motion for Contempt

[¶39.]	"The purpose of the civil contempt power is to force a party to comply with orders and decrees issued by a court in a civil action." *Metzger v. Metzger*, 2021 S.D. 23, ¶ 13, 958 N.W.2d 715, 718 (citation omitted). "For this reason, civil contempt is coercive in nature" and "seeks to compel the person to act in accordance with the court's order, rather than to punish for past conduct." *Hiller v. Hiller*, 2018 S.D. 74, ¶ 20, 919 N.W.2d 548, 554 (cleaned up). "The required elements for . . . civil contempt are (1) the existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order." *Taylor v. Taylor*, 2019 S.D. 27, ¶ 39, 928 N.W.2d 458, 471 (alteration in original) (quoting *Keller*, 2003 S.D. 36, ¶ 9, 660 N.W.2d at 622). The circuit court's findings regarding civil contempt are reviewed for clear error. *Metzger*, 2021 S.D. 23, ¶ 13, 958 N.W.2d at 719.

[¶40.]	The circuit court determined, and we have now agreed, that the Agreement was ambiguous, and it was not clear as to who should be able to claim the children as dependents for tax purposes. This determination alone is sufficient to support the circuit court's finding that Tara did not willfully disobey the order. *See Keller*, 2003 S.D. 36, ¶ 10, 660 N.W.2d at 622 (holding that an order must be "clear, specific and unambiguous" to support a finding of contempt).

### Motion for Attorney Fees

[¶41.]	"The circuit court's allowance or disallowance of attorney's fees is reviewed for abuse of discretion." *Nickles v. Nickles*, 2015 S.D. 40, ¶ 34, 865 N.W.2d 142, 154. "The court, if appropriate, in the interests of justice, may award payment

of attorneys' fees in all cases of divorce, annulment of marriage, determination of paternity, custody, visitation, separate maintenance, support, or alimony." SDCL 15-17-38.

[¶42.] "A two-step process is typically used" when awarding attorney fees in divorce, support, or alimony cases, which reflects the court's obligation to first "determine what constitutes a reasonable attorney fee" and then "determine the necessity for such a fee." *Nickles*, 2015 S.D. 40, ¶ 34, 865 N.W.2d at 154 (quoting *Huffaker v. Huffaker*, 2012 S.D. 81, ¶ 32, 823 N.W.2d 787, 794). The first step, regarding the reasonableness of the fee award, considers "(1) the amount and value of the property involved, (2) the intricacy and importance of the litigation, (3) the labor and time involved, (4) the skill required to draw the pleadings and try the case, (5) the discovery utilized, (6) whether there were complicated legal problems, (7) the time required for the trial, and (8) whether briefs were required." *Id.* The second step has its own unique considerations apart from the reasonableness of the award and considers the necessity of the award by examining "the parties' relative worth, income, liquidity, and whether either party unreasonably increased the time spent on the case." *Id.*

[¶43.] Regarding these factors, "[t]he trial court is required to make specific findings . . . ." *Smetana v. Smetana*, 2007 S.D. 5, ¶ 20, 726 N.W.2d 887, 895 (quoting *Crisman v. Determan Chiropractic, Inc.*, 2004 S.D. 103, ¶ 30, 687 N.W.2d 507, 514). Here, the circuit court made sufficient factual findings to support the determination that the award of attorney fees was necessary. However, the court made no findings regarding the factors relating to the reasonableness of the

attorney fees aside from describing the fees as modest. Therefore, we vacate the award of attorney fees and remand for further proceedings.[11]

## Conclusion

[¶44.] Though the case did not implicate Rule 60(b), the circuit court, nevertheless, possessed authority to clarify its own judgment. Because the Agreement was ambiguous, the court could properly consider parol evidence, and its factual determination that the parties intended to allow Tara to claim the children as dependents was not clearly erroneous; nor was its related conclusion that the Agreement should have been written to allow Tara to claim the children as dependents. As a result, the court's determination that Tara did not deliberately violate the court's order was equally supportable. However, the court did not make the required findings of fact to support its award of attorney fees. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

[¶45.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

11. Tara also requests an award of appellate attorney fees, which we decline in the exercise of our discretion.